RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 9 / 22 / 14
      m3

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| **DAVID ALBRIGHT** | **CIVIL ACTION NO. 12-2117** |
| **-vs-** | **JUDGE DRELL** |
| **SHERIFFS DEPT. RAPIDES PARISH, ET AL.** | **MAGISTRATE JUDGE KIRK** |

## RULING

Before the Court is a motion for summary judgment (Doc. 60) filed by the following officers of the Rapides Parish Sheriff's Office ("RPSO"): the former Sheriff of RPSO, Sheriff Charles F. Wagner ("Sheriff Wagner"); the current Sheriff of RPSO, Sheriff William Earl Hilton ("Sheriff Hilton"); Deputy Sheriff Herman Walters ("Deputy Walters"); and Deputy Sheriff Matthew R. Davis ("Deputy Davis"). All responses have been submitted, and the matter is ripe for disposition. For the following reasons, the motion will be **GRANTED in PART and DENIED in PART**.

### I.  Factual and Procedural Background

David Albright alleges the above Defendants violated both federal and state law on August 8, 2011 by condoning a restaurant manager's decision to bar him entry because he was accompanied by a service animal. (Plaintiff's Second Amended Complaint, Doc. 25). According to Plaintiff, the Defendants should be held liable for violations of the Americans with Disabilities Act, the First Amendment, and the Fourteenth Amendment under federal law, in addition to state law violations. (Id. at 10–16).

Plaintiff allegedly suffers from cataplexy and narcolepsy, which cause seizures and instantaneous sleep spells. (Plaintiff's Statement of Uncontested Material Facts, Doc. 65-1 at 1). Because Mr. Albright's condition can be perilous, he claims he has two trained service dogs who are able to alert and give him a five minute warning of an impending seizure or sleep spell. (Id. at 1). According to his wife, Earlyne Albright, Mr. Albright experiences seizures "all the time" and he can have as many as three to four in one day. (Deposition of Earlyne Albright, Doc. 66 at 15).

Plaintiff contends he arrived at Sieper Junction Café, located in Rapides Parish near Sieper, Louisiana, to attend a Neighborhood Watch meeting on August 8, 2011 featuring guest speakers from the Rapides Parish Sheriff's Office. (Doc. 65-1 at 1). Deputies Davis and Walters, both Defendants in this case, were invited on behalf of the RPSO by the local Neighborhood Watch to speak about safety and security. (Id.; Affidavit of Matthew Davis, Doc. 60-8 at 1; Affidavit of Herman Walters, Doc. 60-9 at 1). At that time, Deputy Davis was the Commander of the Uniformed Division and Deputy Walters was the Assistant Chief Deputy of the Rapides Parish Sheriff's Office. (Doc. 65-1 at 1; Doc. 60-8 at 1; Doc. 60-9 at 1).

When Mr. Albright arrived at Sieper Junction Café for the Fifth Ward Neighborhood Watch meeting, he was accompanied by one of his service dog, Zoey. (Doc. 65-1 at 1; Defendants' Statement of Uncontested Material Facts, Doc. 60-4 at 1). The parties agree that as Plaintiff approached the entrance to the café, the manager stepped in front of him and said he could not enter the café with his dog. (Doc. 65-1 at 2; Doc. 60-4 at 1). Mr. Albright alleges he provided Ms. Teresa Cutts, the manager of the café, with documentation showing Zoey was a service dog, but Ms. Cutts still refused to admit him into the restaurant. (Doc. 65-1 at 2).

The Rapides Parish  Sheriff's Office was called to respond to the dispute and Deputy Gunter arrived on the scene to investigate the problem. (Id.; Doc. 60-4 at 2). According to the Defendants, Deputy Gunter spoke with Ms. Cutts and Mr. Albright separately, and showed Ms. Cutts the identification card stating Zoey is a trained service dog. (Doc. 60-4 at 2). Deputy Gunter informed the parties he would need to contact his supervisor, and a second deputy (whose identity is presently unknown) arrived shortly thereafter. (Id.; Deposition of David Albright, Doc. 60-6 at 31). The second deputy discussed the matter with Ms. Cutts and told Mr. Albright: "You can't stay here. She has a right to refuse service to anybody, so you have to leave." (Doc. 65-1 at 2; Doc. 60-4 at 2).

Plaintiff contends RPSO Deputies Davis and Walters were standing nearby during the exchanges between him, Ms. Cutts, and the deputies responding to the call. (Doc. 65-1 at 3). While Deputy Gunter and the second unknown deputy went inside the café to speak with Ms. Cutts, Mr. Albright approached Deputies Davis and Walters.[1] (Id.). Mr. Albright allegedly asked the deputies if they were going to "stand there while a federal felony is being committed." (Id.; Doc. 60-6 at 31). According to Plaintiff, Deputy Davis shrugged his shoulders in response and Deputy Walters said: "I'm not here. I'm going inside." (Doc. 65-1 at 3; Doc. 60-6 at 31). Deputy Walters walked into the café and Deputy Davis remained outside. (Doc. 65-1 at 3; Doc. 60-6 at 31). Plaintiff claims he again asked Deputy Davis if he was going to do anything. (Doc. 65-1 at 3; Doc. 60-6 at 31). Deputy Davis allegedly replied: "No. We don't investigate or enforce federal law. That's not our job." (Plaintiff's Statement of Uncontested Material Facts, Doc. 65-1 at 3; Doc. 25, at 8). Plaintiff claims Deputy Davis then watched the two deputies come out of the café

---

[1] Plaintiff David Albright is a former police officer and personally knew Deputies Davis and Walters.

and tell Mr. Albright to leave the premises. (Doc. 65-1 at 3). Plaintiff contends Deputies Walters and Davis spoke as planned during the Neighborhood Watch meeting at the café. (Id.).

Plaintiff also avers that several years before August 8, 2011, he had a similar incident with his service dog at the Rapides Parish Courthouse. (Doc. 65-1 at 3; Doc. 25, at 12). Mr. Albright contends a deputy of RPSO temporarily prohibited Plaintiff from entering the courthouse with Zoey. (Doc. 65-1 at 3). According to Plaintiff, a senior deputy intervened and permitted him to enter the courthouse with Zoey. (Id.). Mr. Albright claims he discussed the incident at the courthouse with Defendant Deputy Davis "who affirmed the need for further training of sheriff deputies regarding the ADA and service dogs." (Id.). Both parties agree that RPSO has no courses or training to teach officers about the ADA or the Louisiana state law concerning service animals.  (Doc. 65-1 at 3; Doc. 60-4 at 4–5).

## II.  Law and Analysis

### A. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011)(internal quotations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

4

**B. Federal Law Claims**

**1. Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") is a "federal anti-discrimination statute designed to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Delano-Pyle v. Victoria County, Tex., 302 F.3d 567, 574 (5th Cir. 2002). The ADA is comprised of three titles addressing discrimination in different contexts including employment discrimination in Title I and discrimination by places of public accommodation in Title III. 42 U.S.C. §§ 12112, 12182. Pertinent to this motion is Title II of the ADA which states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government."42 U.S.C. § 12131(b).

The Supreme Court of the United States found state prisons fall "squarely within the statutory definition of public entity" under an unambiguous reading of the ADA. Pennsylvania Dept. Of Correction s v. Yeskey, 524 U.S. 206, 208 (1998). The Fifth Circuit has also articulated that "the broad language of the statute and the absence of any stated exceptions has occasioned courts' application of Title II protections into areas involving law enforcement." Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000). Another district court found that other appellate circuits have consistently construed the expansive language of the ADA to include "anything a

5

public entity does."[2] Salinas v. City of New Braunfels, 557 F.Supp. 2d 777, 781 (W.D. Tex. 2008). The Salinas Court found a municipal police department qualifies as a public entity. Id. at 782. We agree and find that the Rapides Parish Sheriff's Office in this case is a public entity within the meaning of Title II of the ADA.

The plaintiff has the burden of establishing a *prima facie* case of discrimination under the ADA. A *prima face* case is established by proving: 1) plaintiff is a qualified individual within the meaning of ADA; (2) plaintiff was excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.[3] Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 671–72 (5th Cir. 2004) (additional citations omitted).

Causes of action brought under the ADA have several key distinctions from actions brought under section 1983. Unlike demands brought under section 1983, "neither a policymaker, nor an official policy must be identified for claims asserted under the ADA" against a municipality. Delano-Pyle v. Victoria County, Tex., 302 F.3d 567, 575 (2002). Also no "deliberate indifference" standard applies. Id.; see also Salinas, 557 F.Supp.2d at 781–82. However, in order to receive compensatory damages for violations of the ADA, a plaintiff "must show intentional discrimination." Delano-Pyle, 302 F.3d at 575 (citing Carter v. Orleans Parish

---

[2] For a helpful overview of how circuit courts of appeal around the country have broadly interpreted the "services, programs, or activities" language of the ADA, see Salinas v. City of New Braunfels, 557 F.Supp. 2d 777, 781 at note 14 (W.D. Tex. 2008).

[3] The Court notes Plaintiff relies on similar, but not identical, elements for a *prima facie* case under Title II of the ADA from a district court in Tennessee. (Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, Doc. 65 at 15 (citing Sears v. Bradley County Government, 821 F. Supp. 2d 987 (E.D. Tenn. 2011))). We will apply the Fifth Circuit elements outlined in Melton.

Public Schools, 725 F.2d 261, 264 (5th Cir. 1984)). Additionally, the ADA imposes *respondeat*

*superior* liability so employers are vicariously liable for the discriminatory acts of their

employees. Id. at 574–75 (citing Rosen v. Montgomery County Md., 121 F.3d 154, 157 (4th Cir.

1997); Silk v. City of Chicago, 194 F.3d 788, 806 (7th Cir. 1999); Duvall v. Cnty. of Kitsap, 260

F.3d 1124, 1141 (9th Cir. 2001)); see also Rideau v. Keller Indep. Sch. Dist., No. 10-926, 2013

WL 5663580, at *3 (N.D. Tex. Mar. 5, 2013).

### Individual Capacity Claims

Plaintiff alleges violations of Title II of the ADA against Deputies Walters and Davis in

their individual capacities. (Doc. 25 at 1). However, Title II does not allow actions against a

person in his individual capacity. Valder v. City of Grand Forks, 217 F.R.D. 491, 494 (D.N.D.

2003) (citing Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999)).

Defendants have argued this position (Doc. 60-3 at 16–17) (citing Lollar v. Baker, 196 F.3d 603,

609 (5th Cir. 1999)), and Plaintiff conceded such in his memorandum: "Title II allows actions

against public officials and entities only in their official capacity. Suits against these officials and

entities as individuals Title II bars." (Doc. 65 at 16 (citing Valder v. City of Grand Forks, 217

F.R.D. 491 (D. N.D. 2003))). Therefore, summary judgment will be partially **GRANTED** as to

claims under the ADA against the Defendants in their individual capacities.

### Official Capacity Claims

Plaintiff also alleges Deputies Walters and Davis are liable under the ADA in their

official capacities. (Doc. 65 at 20). It is unclear whether Plaintiff also alleges Sheriff Hilton is

liable under the ADA in his official capacity, as Plaintiff did not address any ADA claim against

Sheriff Hilton in his Court-filed argument. (See Doc. 65 at 20–24). However, a broad reading of

Plaintiff's Second Amended Complaint supports an allegation against Sheriff Hilton under the ADA in his official capacity. (Doc. 25 at 10–11). Furthermore, Defendants must have received notice of the potential claim because they discussed Sheriff Hilton's liability under the ADA in depth in their arguments filed. (Defendants' Memorandum in Support of Motion for Summary Judgment, Doc. 60-3 at 17).

As discussed *supra*, a Title II claim can only be brought against a public entity. Defendant William Earl Hilton is the current Sheriff of Rapides Parish Sheriff's Office, the public entity involved in this claim. Thus, any official capacity suit seeking to impose liability on the Rapides Parish Sheriff's Office may only be brought against Defendant Hilton. See Wakat v. Montgomery County, 471 F. Supp. 2d 759, 767 (S.D. Tex. 2007). Therefore, all official capacity claims against Defendant Charles Wagner in his former official capacity as Sheriff of Rapides Parish, as well as official capacity claims against Deputies Walters and Davis, must be **DISMISSED** as a matter of law.

Whether Sheriff Hilton is liable in his official capacity under the ADA turns on whether Plaintiff can establish a *prima facie* case. Plaintiff contends he can establish a *prima facie* case under the ADA by proving the following three elements: 1) plaintiff is a qualified individual within the meaning of ADA; (2) plaintiff was excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. Melton, 391 F.3d at 671–72.

First, Plaintiff avers he is disabled and a qualified individual within the meaning of the ADA. (Doc. 25 at 6). Mr. Albright has cataplexy and narcolepsy, which can cause seizures and

instantaneous sleep spells. (Doc. 65-1 at 1; Doc. 60-6 at 6). In support of this contention, Plaintiff filed some medical records regarding his diagnosis and treatment. (Plaintiff's Exhibits Re: Memorandum in Opposition, Doc. 66-3 at 1–14). Viewing the evidence in the light most favorable to the Plaintiff, we accept for purposes of this motion that Plaintiff is a qualified individual within the meaning of the ADA.

Secondly, Plaintiff contends he was excluded from participation in a Neighborhood Watch meeting and also that he was discriminated against by RPSO officers. (Doc. 65 at 20–21). The parties agree Deputies Walters and Davis were invited as guest speakers at the Neighborhood Watch meeting to discuss safety on behalf of the sheriff's office. (Doc. 65-1 at 1; Doc. 60-8 at 1; Doc. 60-9 at 1). Mr. Albright argues the officers' attendance as guest speakers in their official capacity as police officers renders the meeting to be a service, program, or activity for which the Rapides Parish Sheriff's Office is responsible. (Doc. 65 at 20–22). Defendant argues "[t]here is not factual support for Albright's claim that Davis and/or Walters gave speeches or any presentation to the neighborhood watch that date of the incident." (Defendants' Reply, Doc. 69 at 3). Since we view the evidence in the light most favorable to the Plaintiff, for the limited purpose of this motion for summary judgment, we accept that the presence and participation of Deputies Walters and Davis on behalf of the sheriff's office is a service, program or activity performed by a public entity, in this case, the Rapides Parish Sheriff's Office.

The final element of a prima facie case under the ADA is the most debated element in this case. Plaintiff argues his exclusion from the activity was because of his disability–namely his medical condition that requires having a service dog accompany him in public for his safety. Plaintiff contends the case "involves public services given to some and denied to another." (Doc.

65 at 21). Plaintiff explains that high-ranking officers of RPSO, Deputies Walters and Davis, were speaking to a local neighborhood watch meeting on behalf of the Sheriff's office about general law enforcement issues. (Id.). These high-ranking officers knew Mr. Albright had been excluded from attending the meeting by the manager of Sieper's Café because of his disability and condoned a line deputy's ordering Plaintiff to leave the property. (Id. at 20–21). According to Plaintiff, Deputies Walters and Davis attended the meeting regardless, availing the attendants of their "law enforcement expertise, authority and wisdom by speaking and interacting with those in attendance." (Id.).

Defendants counter that Mr. Albright was not discriminated against because of his disability and cite the following cases to support their position: Pona v. Cecil Whittakers, Inc., 155 F.3d 1034 (8th Cir. 1998); Valder v. City of Grand Forks, 217 F.R.D. 491 (D. N.D. 2003); and Sears v. Bradley County Goverment, 821 F.Supp.2d 987 (W.D. Tenn. 2011). The Court does not find these cases from other jurisdictions to be on point or persuasive.[4]

Defendants also cite Gipson v. Popeye's Chicken and Biscuits, 942 F.Supp.2d 1303 (N.D.Ga. 2013) in support. While this case is factually similar, the Eleventh Circuit found that

---

[4]   Unlike the Fifth Circuit, the Eighth Circuit appears to require a plaintiff show the public entity involved had a policy, practice, or custom in place discriminating against disabled individuals with service animals. See Pona v. Cecil Whittaker's, Inc., 155 F.3d at 1037 (stating the claim fails to survive summary judgment because Plaintiff did not sufficiently prove the existence of a policy, practice or custom. "The absence of such evidence is, on reflection, hardly surprising. Complaints about the exclusion of service dogs from places of public accommodation must surely, as a practical matter, not be numerous, both because proprietors will hardly ever be so callous as to exclude them."). Pona is also factually different because the officer involved informed the person with a service dog that he had civil liberties under the ADA to be at the restaurant. Id. From our thorough review of the record, It does not appear the officers in this case did the same. Also in the Eighth Circuit, Valder follows Pona as precedent and found the plaintiff's allegations were not sufficient to state a claim under Title II of the ADA. Valder, 217 F.R.D. at 495. In Sears, the Sixth Circuit found a police officer was not liable under Title II for delaying entry of an individual with a service animal to the courthouse while he sought guidance from the judge because he was not sure animals were allowed in the courtroom. 821 F.Supp.2d at 989–92. This is factually distinguishable from the case at bar as it involved a delay as opposed to completely barring entry and the Court found the police officer did not intentionally discriminate against the disabled party. Id.

10

the plaintiff was not excluded, denied a benefit, or discriminated against by an officer who asked him to leave a restaurant as it was private property. It reasoned: while "whether a service dog is permitted in a restaurant is a fairly straight forward question,""[i]f the court were to determine that [p]laintiff was denied services based on his disability because Officer Fuller did not convince the restaurant that [p]laintiff and his service dog could remain in the restaurant, the police would become responsible for sorting out civil liabilities.... County police officers are not civil lawyers."

We agree that whether a service dog is permitted in a restaurant is a straight-forward question of law, but disagree that an officer would be liable if he did not convince the restaurant manager to permit plaintiff to enter with his service animal. The instant case is not one in which a deputy valiantly defended the civil rights of the plaintiff only to be refused by the restaurant manager. Rather, the officer did not educate the restaurant manager about the ADA nor did he inform Mr. Albright of his civil rights against the restaurant. We are troubled that Defendants may have intentionally discriminated against Mr. Albright and been deliberately indifferent to his civil rights. This case is also distinguishable because Mr. Albright had a previous experience in which he was refused entry into a courthouse with his service animal and personally notified Deputy Davis, a Defendant in this matter. This is very different from Sears in which an individual with a service animal was delayed entry into a courthouse and the county responded by holding a training session to address the needs of disabled individuals with service animals and display the county's new service animal policy in public buildings. 821 F.Supp.2d at 989. Here on the other hand, the parties agree the officers receive no training about the ADA, and Defendants seems to have no intention of training their officers about the ADA.

Defendants have not met their burden on summary judgment and there remain genuine disputes of material fact concerning whether the exclusion, denial of benefits or discrimination was by reason of his disability. For purposes of this motion for summary judgment, Plaintiff has evidence to support a *prima facie* case under the ADA. Therefore, summary judgment will be **GRANTED** in **PART** and **DENIED** in **PART.** Summary judgment is **GRANTED** as to Defendants Wagner, Walters, and Davis.  Summary judgment as to Plaintiff's ADA claim against Sheriff Hilton in his official capacity is **DENIED**.

### *Compensatory Damages*

Plaintiff seeks compensatory damages for suffering "damage to his human constitutional, and civil rights including, but not limited to, severe mental anguish and distress, loss of personal reputation, loss of freedom of movement, speech, and association, and the right to access and enter a public forum." (Complaint, Doc. 1 at 18). As noted previously, compensatory damages may be granted under the ADA only upon a showing of intentional discrimination. Delano-Pyle, 302 F.3d at 575 (citing Carter v. Orleans Parish Public Schools, 725 F.2d 261, 264 (5th Cir. 1984)).

Here, whether Deputies Walters and Davis intentionally discriminated against Mr. Albright remains a dispute of material fact. Plaintiff alleges the officers knew Mr. Albright was excluded from attending the meeting, but knowledge is not synonymous with intent. The facts, according to Plaintiff, are that the line deputy handling the situation said: "You can't stay here. She has a right to refuse service to anybody, so you have to leave." (Doc. 60-6 at 31). Plaintiff contends he walked up to Deputies Davis and Walters who were standing nearby during the exchange and asked, "Are you just going to stand there while a federal felony is being committed and not do anything?" (Id.). Plaintiff alleges Deputy Davis shrugged his shoulders and Deputy

Walters said "I'm not here. I'm going inside." and walked away. (Id.). At that point Plaintiff

claims he again asked Deputy Davis if he was going to do anything and Davis allegedly said,

"No. We don't investigate or enforce federal law. That's not our job." (Doc. 25 at ¶ 34). Viewing

the facts in the light most favorable to the Plaintiff, the officer's actions and inactions may have

been intentional. Thus, Defendant's motion for summary judgment as to compensatory damages

is **DENIED**.

**2. 42 U.S.C. § 1983**

Plaintiff alleges claims under 42 U.S.C. § 1983 ("Section 1983") for violations of his

rights under the ADA, the First Amendment, and the Fourteenth Amendment against the

following Defendants: Sheriff Wagner, Sheriff Hilton, Deputy Walters, and Deputy Davis.

Section 1983 imposes liability on anyone who "under color of any statute, ordinance,

regulation, custom, or usage, of any State" violates the constitutional rights of another. Because

section 1983 contemplates violations of both constitutional and statutory mandates, "a plaintiff

must assert the violation of a federal *right*, not merely a violation of federal *law*." Equal Access

for El Paso, Inc. v. Hawkins, 509 F.3d 697, 702 (5th Cir. 2007) (quoting Blessing v. Freestone,

520 U.S. 329, 340 (1997) (emphasis in original, additional citations omitted). To state a viable

claim under 42 U.S.C. § 1983, "a plaintiff must (1) allege a violation of a right secured by the

Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." Whitley v. Hanna, 726 F.3d 631, 638

(5th Cir. 2013) (quoting James v. Tex. Collin County, 535 F.3d 365, 373 (5th Cir. 2008)

(additional citations omitted). There is no dispute that Defendants acted under color of law.

However, whether a constitutional violation occurred is the matter for determination.

13

To establish personal or individual liability in a Section 1983 action on the merits, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Hafer v. Melo, 502 U.S. 21, 25 (1991)(additional citations omitted). However, more is required for liability in official capacity claims: "the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (additional citations omitted).

## 1. Violation of ADA

The ADA expressly provides that "the remedies, procedures and rights" available under the Rehabilitation Act are also available under the ADA. 42 U.S.C. § 12133. For this reason, the "jurisprudence interpreting either section is applicable to both." Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000). In a case of first impression in the circuit, the Fifth Circuit held in Lollar v. Baker that "because the Rehabilitation Act by its express terms provides comprehensive enforcement and remedial measures of those rights, we hold that section 1983 cannot be used as an alternative method for the enforcement of those rights." Lollar v. Baker, 196 F.3d 603, 610 (5th Cir. 1999). The Fifth Circuit found the following reasoning from an Eleventh Circuit opinion persuasive: "[t]o permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenue of redress as well as section 1983 would be duplicative at best; in effect such holding would provide the plaintiff with two bites at precisely the same apple." Id. (citing Holbrook v. City of Alpharetta, 112 F.3d 1552 (11th Cir. 1997). A number of district courts have similarly found the plain language of the ADA "applies only to *public entities* and does not contemplate holding government employees liable in their individual capacities." DeLeon v. City of Alvin Police Department, C.A. No. 09-1022, 2009 WL 3762688, at * 2 (S.D.

Tex. Nov. 9, 2009) (quoting <u>Gonzales v. City of Corpus Christi</u>, No. 05-0280, 2006 WL 1517507, at *5 (S.D. Tex. May 31, 2006) (emphasis in original), <u>aff'd</u>, C.A. 06-41094, 226 Fed. Appx. 342, 344–45 (5th Cir. 2007); <u>see</u> <u>also</u> <u>Georgetown v. Tran</u>, C.A. No. 01-1584, 2002 WL 818079, at *3 (E.D. La. Apr. 25, 2002); <u>Joseph v. Port of New Orleans</u>, C.A. No. 99-1622, 2002 WL 342424, at *10 (E.D. La. Mar. 4, 2002), <u>aff'd</u>, 55 Fed. Appx.17, at *1–2 (5th Cir. 2002); <u>D.A. v. Houston Ind. School District</u>, 716 F.Supp.2d 603, 621–24 (S.D. Tex. 2009), <u>aff'd</u>, 629 F.3d 450, 456 (5th Cir. 2010). Also, in an unpublished opinion, the Fifth Circuit has held that a plaintiff "may not bring a 42 U.S.C. § 1983 action for damages against a state official in his individual capacity to vindicate rights conferred by Title II of the ADA." <u>Rivera v. Dawson</u>, C.A. No. 05-41565, 2007 WL 1223914 (5th Cir. Apr. 25, 2007).

As to claims against the RPSO deputies in their individual capacity, we choose to join many of our sister courts, the Fifth Circuit, and other circuit courts in holding that the Plaintiff shall not have two bites at the apple by bringing duplicative claims under both the ADA and section 1983.[5] Thus, Defendants' Motion for Summary Judgment will be **GRANTED** as to Plaintiff's section 1983 claim for violation of the ADA against Defendants in their individual capacity.

As for liability of Defendant RPSO officers in their official capacity under § 1983 for violations of Title II of the ADA, we look to an opinion by another District Court in this Circuit. In <u>Pena v. Bexar County,</u> a district court in the Western District of Texas resolved this question by relying on the broad language in <u>Lollar</u> to hold that the plaintiff's § 1983 claims against the

---

[5]   <u>See</u> <i>supra</i> and <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 202); <u>Garcia v. State Univ. Of N.Y. Health Sci. Ctr.</u>, 280 F.3d 98, 107 (2d Cir. 2001; <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999 (8th Cir. 1999).

public entity in its official capacity, in addition to individual-capacity claims, were precluded because the ADA already provides a comprehensive remedy for violations of Title II. 726 F.Supp.2d 675 (W.D. Tex. 2010). The Court finds this reasoning persuasive and consistent with <u>Lollar</u>. Therefore, Defendants' Motion for Summary Judgment will be **GRANTED** as to Plaintiff's claims against Defendants in their official capacity under section 1983 for violating the ADA.

**2. Violation of First Amendment**

The First Amendment provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble." U.S. Const. amend. I. Freedom of association is constitutionally protected under this Amendment and falls into two different categories: intimate association and expressive association. <u>City of Dallas v. Stanglin</u>, 490 U.S. 19, 24 (1989) (citing <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 617–18 (1984)). An intimate association is the choice to enter and maintain certain intimate human relationships from undue state intrusion. <u>Id.</u> An expressive association is the right to associate for the purpose of engaging in activities protected by the First Amendment including speech, assembly, petition for the redress of grievances, and the exercise of religion. <u>Id.</u>

In this case, Plaintiff alleges he was deprived of intimate association through personal friendship and also claims he was denied the freedom to assemble with other members of the Fifth Ward Neighborhood Watch. (Plaintiff's Second Amended Complaint, Doc. 25 at 11). Assuming Plaintiff's constitutionally protected right to association was infringed, Plaintiff must demonstrate that deprivation was committed by a person acting under color of state law to give rise to section 1983 liability.

16

The facts clearly show Plaintiff was denied entry to Sieper Junction Café to attend the Neighborhood Watch meeting by Ms. Cutts, the manager of Sieper Junction Café. Although the line officer responding the incident arguably should have informed Ms. Cutts that Plaintiff had a right to attend the meeting with his dog under federal law, even then the Plaintiff may conceivably have been barred entry by Ms. Cutts. Plaintiff's argument is further removed: Defendant Deputies Walters and Davis should have informed Ms. Cutts that an individual with a disability has a right to frequent places of public accommodation with his service animal and it is a violation of the law to refuse entry. However, even if Deputies Walters and Davis had instructed Ms. Cutts about the law, Ms. Cutts still could have chosen to bar Mr. Albright from entering the premises. Essentially, the facts of this case do not support a freedom of association or freedom of speech claim under section 1983 against Deputy Davis, Deputy Walters, Sheriff Wagner, or Sheriff Hilton. Any potential deprivation of Plaintiff's right to intimate association or freedom to assemble was committed by Ms. Cutts and not by these Defendants. Therefore, Defendants Motion for Summary judgment as to Plaintiff's first amendment claim under section 1983 will be **GRANTED**.

## 3. Violation of Fourteenth Amendment

Plaintiff also contends Defendants violated his "liberty interests, right to travel on public spaces, freedom of movement, and right to access guaranteed by the due process clause of the Fourteenth Amendment of the United States Constitution." (Doc. 25 at 13). Specifically, Plaintiff alleges "Defendants' actions taken under color of law constitute deliberate indifference to Plaintiff's right to access and enter a public forum." (Id.).[6]

---

[6] The Court notes Plaintiff did not specifically address his Fourteenth Amendment claim in his Opposition. (See Plaintiff's Opposition to Motion for Summary Judgment, Doc. 65 at 24–30).

17

Defendants argue "no right or privilege was denied or abridged because [] no Defendant had any ability to compel or force Ms. Cutts to allow Mr. Albright's dog to enter the Café." (Doc. 60-3 at 28). Defendants also note another district court has held that both the county and police sergeant were entitled to summary judgment on a Fourteenth Amendment claim in a case with facts similar to the case at bar. See Sears, 821 F. Supp.2d at 992–94.

Assuming the restaurant could be considered a "public forum" while a public Neighborhood Watch meeting was held, the actions of the RPSO officers did not constitute deliberate indifference to Plaintiff's right to access and to enter a public forum. As discussed *supra*, the evidence before the Court clearly shows none of the RPSO Officers physically barred Plaintiff from the restaurant and Ms. Cutts made the decision to prohibit Mr. Albright from entering. (See Doc. 60-6; Affidavit of Deputy Gunter, Doc. 60-7; Doc. 60-8; Doc. 60-9). The facts of this case do not support a denial of access to a public forum claim or any other right under the Fourteenth Amendment as applied to Deputy Davis, Deputy Walters, Sheriff Wagner, or Sheriff Hilton. Mr. Albright may have been wrongfully denied entry to a public forum, but that actual deprivation was not committed by these Defendants in violation of the Fourteenth Amendment. Therefore, Defendants Motion for Summary judgment as to Plaintiff's Fourteenth Amendment claim under section 1983 will be **GRANTED**.

## C. State Law Claims

Plaintiff also contends Defendants violated his statutory rights under Louisiana law, specifically his rights under the Louisiana Cane Law, La. R.S. 46:1951–59 (and cases interpreting), and the Louisiana Commission of Human Rights law, La. R.S. 51:2231–65. (Doc. 25 at 2). A federal court generally has the discretion to exercise supplementary jurisdiction over

these state law claims. In this case, Plaintiff did not oppose Defendant's Motion for Summary

Judgment as to the state law claims. (See Doc. 65).

The standard for an unopposed Motion for Summary Judgment is as follows: A court

cannot grant summary judgment simply because the nonmoving party fails to oppose the motion,

even if the failure to oppose violates a local rule. Hibernia Nat. Bank v. Administracion Cent.

Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985). The moving party "has the burden of

establishing the absence of a genuine [dispute] of material fact and, unless he has done so, the

court may not grant the motion, regardless of whether any response was filed." Id. However, in

this District, Local Rule 56.2 gives added direction when summary judgment is unopposed: "All

material facts set forth in the statement required to be served by the moving party will be deemed

admitted, for the purposes of the motion, unless controverted as required by this rule."

## 1. Louisiana White Cane Law

The purpose of the Louisiana White Cane Law, La. R.S. 46:1951–59, is "to encourage

and enable a physically disabled person to participate fully in the social and economic life of the

state and to engage in remunerative employment." La. R.S. 46 § 1951. The statute entitles

physically disabled individuals to be accompanied by an assistance dog in places of public

accommodation, including restaurants. La. R.S. 46 § 1953. Potential penalties for an individual

who violates the Louisiana White Cane Law can include: a fine, imprisonment, damages, costs of

a legal action, and attorneys fees of the prevailing party. La. R.S. 46 § 1956.

In this case, Theresa Cutts apparently prohibited Plaintiff from entering Sieper Junction

Cafe, a restaurant and place of public accommodation. At the time of the incident, the cafe was

operated by Theresa Cutts and was owned by Elma Wells. Plaintiff has not alleged any facts that

show any of the officers denied Plaintiff access to this restaurant. Defendants Wagner, Hilton,

Walters and Davis did not own, lease, or operate Sieper Junction Cafe, and fall outside the scope

of the Louisiana White Cane Law. Thus, Defendants' Motion for Summary Judgment regarding

Plaintiff's Louisiana White Can Law claim will be **GRANTED**.

**2. Louisiana Commission on Human Rights**

  This series of laws was enacted by the Louisiana legislature in part to "safeguard all

individuals within the state from discrimination because of race, creed, color, religion, sex, age,

disability, or national origin in connection with public accommodations." La. R.S. 51 § 2231.

Plaintiff alleges a number of violations of the Louisiana Commission on Human Rights law, La.

R.S. 51 §§ 2231–65. First, Plaintiff contends Defendants violated § 2247 when Plaintiff was

prohibited from entering the restaurant and unlawfully denied an individual with disabilities the

full and equal benefit of accommodation at a place of public accommodation. Second, Plaintiff

alleges Defendants violated § 2256 by conspiring to violate the Louisiana Commission on

Human Rights law. In violation of this section, Plaintiff specifically alleges that two or more

persons conspired to discriminate against him for opposing an unlawful act of discrimination and

that the officers were aiding and abetting another individual to unlawfully discriminate against

him. Plaintiff also requests civil remedies for injunction and damages under § 2264 in

conjunction with these violations.

  Because Ms. Cutts, and not the officers, denied Plaintiff entry to the restaurant, Plaintiff's

first contention under § 2247 is not applicable to Sheriff Hilton, Sheriff  Wagner, Deputy Davis,

or Deputy Walters. Plaintiff's allegations of a conspiracy to discriminate under § 2256 also fall.

As we noted, Plaintiff has not addressed the matter of claims against the RPSO Officers and the

record is void of any evidence supporting them. Likewise, we find no evidence any officers aided or coerced Ms. Cutts to bar Plaintiff's entry which occurred before the officer arrived. For these reasons, summary judgment as to these claims against Defendant RPSO Officers and corresponding requests for civil remedies under §2264 will be **GRANTED**.

### III. Conclusion

Thus, for the reasons detailed above, Defendants' Motion for Summary Judgment (Doc. 60) will be **GRANTED in PART and DENIED in PART**. Plaintiff's claim under Title II of the ADA against Defendants Wagner, Hilton, Walters and Davis in their individual capacities, as well as against Defendants Wagner, Walters, and Davis in their official capacities will be **GRANTED**. However, summary judgment will be **DENIED** as to Plaintiff's claim under Title II of the ADA against Sheriff William Hilton in his official capacity. Summary Judgment as to all moving parties will be **GRANTED** on the following claims:

1. ADA claim under § 1983

2. First Amendment claim under § 1983

3. Fourteenth Amendment claim under § 1983

4. Louisiana White Cane Law claim

5. Louisiana Commission on Human Rights claim

Judgment will be entered by a separate disposition on this date.

SIGNED on this _20_ day of September, 2014 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT